The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having a manner and form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw to mind and give their attention to the Court as now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three interesting cases, and we look forward to the arguments. In the first case, Consumer Financial Protection Bureau v. Nexus Services, Mr. Lawrence. Yes, Your Honor. Good to have you with us. You may proceed. Thank you. If it may please the Court. I'm Zachary Lawrence, here for the appellants in this matter. I'm going to keep things fairly brief. We have just a few issues on appeal. There was a default sanction entered by the lower court in this matter. In addition to that, there were Rule 37 sanctions issued after the fact. We also had the issue of calculation of damages and whether or not a revenue-based calculation is appropriate, given the Supreme Court's holding in lieu. And last, we're going to be dealing with Rule 65 sanctions and whether or not those were waived and whether or not the conditions of Rule 65 are mandatory for every injunction. So I'll start off with Rule 65 sanctions and the waiver issue, because that is likely the most interesting issue. Rule 65 sanctions. Excuse me. Rule 65 and the injunction. So in this matter, a default sanction was entered against defendants, and an injunction was requested. After the default was entered, the Court ordered briefing in preparation for a damages hearing. Within that briefing, the CFPB, along with the State plaintiffs, requested seven separate injunctive provisions. Those seven separate injunctive provisions took up approximately a page, and they involved, essentially, no longer being able to make certain misrepresentations to clients regarding the scopes of Nexus services, which were immigration bonds, no longer being able to make certain representation with regard to collections efforts with those bonds, providing contracts in the language of a consumer, not assisting any other corporate defendant in similar violations, no longer using GPS devices, and no longer collecting funds for the GPS devices or retaining them. That rather narrow set of injunctive relief that was requested in the final order in judgment, turned into approximately 70 different provisions. That covered everything from reporting requirements to record-keeping methods to forcing all employees or contract vendors to sign an acknowledgment of the order that essentially would have made them vicariously liable for contempt, should they attempt to do it. And none of these things appeared in the trial briefing, nor is there any explanation given the complaint and the trial briefing, as to why those rather broad injunctive proscriptions appear in the final order. Again, you went from a complaint that requested that certain harmful behavior be enjoined. You had trial briefing on seven separate injunctive provisions, and then you had a complaint with well-nigh seven. Most or not all of the facts were conceded, weren't they? All of the facts relating to liability were, in fact, conceded, yes. So initially I believe you had 15 counts. However, those counts had to do with certain representations that were made to clients. And you're saying the injunction is not specific enough? I'm saying the injunction doesn't specifically relate to the damages complained of, nor to the issues that were immediately relevant to the case. So, yeah, I mean, the lack of specificity certainly was an issue under Rule 65D. The lack of reasoning for the particular injunctive provisions issued also was a significant reason I would claim that it fails to comply with Rule 65D. Well, show us in the record where you made that argument before the district court that the under 65D, that it was invalid. I did not, nor did I know that the injunctive provisions would be so broad. Why wasn't all that weighed then? Why wasn't all that? Your complaint that wasn't specific enough wasn't presented to the district court. Naturally, because I was presented with seven injunctive provisions that I thought were reasonable given the complaint. So I'm presented in trial briefing, and my clients are presented with the fact that they're now liable for certain violations of consumer protection law. There was no question about that default had issued. We admitted that. I then received trial briefing that contained seven separate injunctive provisions, which I think are reasonable given that we've admitted to liability. Thus, I don't oppose them. I don't object to them. I am perfectly happy with those seven provisions. Thereafter, a final judgment in order issues not with seven provisions, but rather with close to ten times that. And what's the problem with those provisions? The problem with those provisions, in part, was they don't relate to the harm complained of, in part, that they are, quite frankly, flummoxing, right? How do they not relate to the harm? They all seem to be about not committing these violations anymore and ensuring that, you know, it doesn't, you know, that they make it right and that they don't do it again. For instance, temporally, these are vastly broader than the harm complained of and the complaint, and that admitted and proven. So you had in the complaint certain practices that were occurring between, I believe, 2014 and 2018 on contractual provisions specific to those two agreements. We're wanting to look at, say, the definition of an effective customer or the effective date that both predates those contracts and postdates the harm shown. So it would go not from 2018 or people subject to those 2018 contracts, but rather any consumer of Nexus Services products between its founding and the date of the order. Again, just because of definitional issues with the injunction. Well, that, I mean, so that's saying the court found or you admitted to violations within a certain span of years and the court ordered you to, you know, make it right and not commit those violations at any time, right? I mean, what's the disconnect there? The disconnect is many of these consumers might not have been subject to the deceptive practices that were demonstrated by admission of the facts in the complaint. So, again, for instance, if a consumer were to sign an agreement that was used in 2020, simply because the 2018 contract was deceptive or wasn't presented in English doesn't necessarily mean that that 2020 consumer would have been deceived, either by the contracting processes or anything else. But what are your obligations under the injunction to that 2020 consumer? Our obligations to that 2020 consumer are to no longer accept funds from them, to essentially the obligations aren't to the consumer, they're to the CFPB and to New York and to third parties. The obligations to the consumer are parts of the injunction to which either in the requested relief or the relief as it was ultimately granted, we take no real issue with. We aren't looking to put GPS devices on 2020 consumers, nor are we looking to present them contracts in English, et cetera. The point being, though, say with the transmission of information from clients. Nexus Services was sold. It was sold in a manner that, at least at trial, it's been argued violated this particular injunction. I believe it's 19 of the order, paragraph 19, prevents the transmission of customer information essentially all time up to the effective date, which would be approximately April 2, I believe, of 2024. Say a consumer calls up Nexus's successor and demands for a refund. Nexus's successor has no information about that consumer, zero. And they can't because of paragraph 19 of that order, or at least because they're attempting to avoid contempt due to the contents of paragraph 19 of that order. To shift gears here slightly, I'll move on to the calculation of damages. What are you moving on to? The calculation of damages. Calculation of damages. Correct. Under net revenue. So in essence, our argument is that this Court should adopt the Seventh Circuit's analysis under first legal. What the Seventh Circuit did in first legal is it looked at the Supreme Court's holding within lieu, and it held that because the trial court was utilizing law that dealt with equitable precedents, equitable ideas, essentially relief at equity, the trial court may have granted equitable relief, and therefore the net revenue calculation could not have been utilized because of the Supreme Court's holding. And did you make this argument before the district court? I did make the argument before the district court that the actual loss portion was never shown. So within trial briefing, what I stated was that Gordon and the use of net revenues was inappropriate in this case because consumer loss was never shown. So you're saying this issue was preserved for appeal? I believe it was preserved in the trial briefing. I believe, again, I put forth that under this standard, one needs to show that net revenues approximates actual loss. It was a burden. But the number was the number was the proposed number, nexus, that gave to the district court, correct? So the numbers were the revenues of nexus. Nexus couldn't lie about its revenues. Nexus made approximately $200 million minus refunds. That's all established. Where the problem came in was that these numbers, the revenues of nexus, didn't represent actual consumer loss. The idea, at least as I understand behind a net revenue calculation, is one need initially to demonstrate that net revenues approximates actual loss. And in this case, I think, based on the allegations admitted in the complaint, you have a showing that consumers got, in essence, exactly what they paid for. So the complaint goes through. You're saying that the numbers are too high. I'm saying they don't approximate actual loss. And thus, both as an equitable remedy and a legal remedy, net revenues would be the wrong calculation. So initially, as an equitable remedy, net revenues requires one to show that the revenue approximates consumer loss. And you don't want to allow someone to unduly benefit from their wrongdoing. What was the proof that you offered of the legitimate costs that should be deducted from the net revenue to reach the actual loss to the consumer, to reach that amount? What I argued was that the complaint stated these consumers were desperate for release from jail. I'm sorry. What was the evidence you presented of the amount that should be deducted, the legitimate costs that were charged? I did not. I argued, rather, that based on the allegations in the complaint, benefit to the consumer, indeed, the main benefit of the parties. You didn't present any evidence. I was not able to, no. So I thought it operated. I'm sorry, Judge. No, you go ahead. I thought there's a two-step inquiry. The government presents its number, and then you come to they have to, you know, give some evidence of the amount of loss. And then you come forward with your evidence to deduct from that what was an appropriate and legitimate charge to reach the final number. But you say there's no evidence at step two. So, no. Rather, I say they don't meet the burden at step one. I believe the government's burden to utilize this net revenue calculation is to show that net revenues approximate. The first step is just the government bears the burden to show the amount it seeks in restitution. Again, I could be wrong, but I believe case law speaks to that number needing to reasonably approximate actual loss. What's your best site? I believe you would have that in Gordon. That the government bears the burden, that it's not your burden to show that this was not actual loss. I believe in describing the test, Gordon states that. I believe it's also in Feber, F-E-B-R-E. And that that must be a measure of loss to the individual not gained by the defendant. It's loss. I believe it reasonably approximates loss. And you say that that wasn't demonstrated in the evidence. How? Again, because essentially consumers got the main benefit of their burden. How do we know that? What's the evidence of that? Because of the complaint and that it wasn't in contest. So within the complaint, it pleads that there are desperate consumers seeking freedom that have no other option. I cannot give you a paragraph site. I believe it's going to be in the introductory paragraphs. So it's just the argument that they were desperate for help. They were desperate for help. So we should assume that they got something. Well, no. It states that they received the very help they were seeking. So it states that they are released from prison. They're issued a bond. They are then taken to, I believe, a McDonald's. They are then taken to a hotel. They are then free for dependency of their case with an immigration court. In essence, they wished to leave jail. They paid and they were able to leave jail. So they got the main benefit of their bargain. Okay. Thank you. Thank you. You've saved some time. Mr. Turner. Ms. Turner, I'm sorry. May it please the Court. Larkin Turner for Plaintiff Appellee Consumer Financial Protection Bureau and with their consent, arguing on behalf of the State Appellees. So for two years, appellants refused to meaningfully participate in this case. I will jump to the injunction and restitution issues. This Court should reject appellants' forfeited complaints to the terms and scope of the district court's injunction. Appellants waived any objections they might have had. They repeatedly failed to press them in the district court. They only vaguely have raised them in this court. But even if you set aside the waiver, the claims fail on the merits. The order complies with Rule 65D, and the district court did not abuse its discretion in imposing the scope of relief here, which is reasonably related to defendant's serious misconduct. Appellants' challenge to the district court's award of monetary relief fails for three independent reasons. First, as the district court held, and as we argued in our brief, the award is independently justified under the Consumer Financial Protection Act as a refund of monies. So this court can affirm on that basis, it was an independent basis and an alternative basis the district court explicitly held in her order on which this can be affirmed. Second, the district court ordered legal restitution. Lieu v. SEC is about equitable remedies. This is a legal award of monetary relief. We were not tracing funds, seeking particular property. This is not an equitable award. Appellants' attempt to transform the legal restitution that the district court awarded here into equitable restitution is inconsistent with the district court's order. It's inconsistent with Supreme Court precedent distinguishing between equitable and legal remedies and with this court's precedent doing the same. And finally, for the reasons, Judge Rushing, that you were just discussing with my friend on the other side, even if Lieu were to apply, the district court's order complies with Lieu. It represents a reasonable approximation of appellants' unjust gains based on the evidence it had before it, which was appellants' stipulated figure of monies it collected from consumers lest the refunds already provided. There was no evidence on which the district court could have otherwise subtracted any amount of money from that award. Thank you. If there are no questions, we respectfully ask that this court affirm the district court's judgment. Thank you. Thank you very much. Mr. Lawrence? Yes, Your Honor. I'll be brief. So extremely quickly, I don't believe the court describing their relief as being legal is of any moment. Again, I would urge the court to adopt the Seventh Circuit's analysis in first legal. I believe that's amongst the only precedent dealing post-Lieu with a restitution award of this sort. The trial court here did exactly what the district court did in the first legal case, which is rely on equitable precedent to issue an equitable award. The only additional thing I would say is that one is going to look toward the nature of the award rather than any language describing it to determine whether it's legal or equitable. The award here is payable on 10 days. It's supported entirely on a jurisprudential basis of equitable remedies. I do believe it to be equitable. Lastly, I would just know that there was virtually nothing that could have been presented in opposition to the final injunction. Appellants simply were unaware it was going to take the scope, the breadth, the form it took prior to. So you couldn't have objected is what you're saying? There was no method because the appellants had no idea this was going to come. Again, appellants. Well, you can even make post-ruling objections and motions or something. They're provided for in a rule. We had noticed appeal by that point. You could have shown at the hearings. You could have litigated. I, with all due respect, do not believe I could have because I wasn't counsel at that point, post my entrance into the case. Well, I'm talking to you as the client. The royal you. Sure. Again, I think you're talking about a default judgment very, very quickly followed on the heels of trial briefing wherein an injunction was proposed that appeared acceptable. There was no motion to reconsider. There wasn't because appeal was noticed, and the assumption was that appeal would provide the remedy we saw, which was overturning the injunction for overbreadth. You filed a timely notice of appeal. Most certainly we did. You knew when and you knew what the rules provided on that. We certainly did. But you didn't show up for court for a long time. Again, I believe the clients were having rather significant hardships that are spoken to both in the appellate briefs and the record. That being said, there's a vast difference between not showing up to court or not providing income statements and what was in essence a penalty of $800 million, which is really what this case comes down to. Appellants could not contest liability nor damages, and these sanctions were extremely severe. But given the very brief argument of the States and the CFPB, that is all appellants have unless anyone would like anything further. Thank you very much. Thank you, sir. We will take the matter under advisement. We'll come down and re-counsel and then go to our next case.
judges: Robert B. King, Allison J. Rushing, DeAndrea Gist Benjamin